IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–0293–WYD–KMT

MELISSA R. SMITH, and
STEVE A. PEREA, JR.,

      Plaintiffs,

v.

MARTEN TRANSPORT, LTD.,

      Defendant.

---

# ORDER

---

This matter is before the court on Plaintiffs' Motion to Compel Insurance Claim

Investigation Materials ("Mot.") [Doc. No. 24, filed October 25, 2010].  Defendant filed a

response on November 15, 2010 [Doc. No. 30], and the plaintiffs replied on November 30, 2010

[Doc. No. 35].  The court heard oral argument on December 13, 2010, at which time the

defendant submitted all documents listed on "Defendant's Privilege Log" [Doc. No. 24-2, Mot.

Ex. 2] (documents hereinafter referred to as "Priv. Doc. #") for *in camera* review.  The matter is

now ripe for review and ruling.

Plaintiffs claim a number of items on the defendant's privilege log are part of a routine

investigation into the nine car accident which triggered the claims in this action and, as such, are

not privileged.  Plaintiffs claim the information constitutes investigation materials gathered in

the normal course of business for Marten Transport, Ltd. ("Marten") as part of its decision to

self-insure accident claims such as those of the plaintiffs.  Defendant claims the withheld items

were created in anticipation of litigation and are covered by the work product doctrine and

additionally, as to some of the withheld documents, by the attorney-client privilege.

At issue are two reports created by J.S. White & Associates and tendered to outside

Nebraska counsel Stephen S. Gealy, an attorney hired by the company immediately upon

learning of the multi-vehicle accident (Priv. Docs. 1 and 8); notes and other documents created

by Ryan McGee, a full-time Marten employee in the risk/claims department who was carrying

out the investigation and assessment of all the claims arising from the accident (Priv. Doc. 4);

and several handwritten and/or typewritten notes and summaries, most of unknown authorship,

evaluating various claims of persons and entities involved in the accident (Priv. Docs. 3, 5, 6 and

7).[1]

*ANALYSIS*

Work product immunity derives from the provisions of Rule 26(b)(3), Fed. R. Civ. P.,

which provides in relevant part:

> (3) Trial Preparation: Materials
> (A) Documents and Tangible Things. Ordinarily, a party may not discover
> documents and tangible things that are prepared in anticipation of litigation or for
> trial by or for another party or its representative (including the other party's
> attorney, consultant, surety, indemnitor, insurer, or agent). But ... those materials
> may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare
> its case and cannot, without undue hardship, obtain their equivalent by
> other means.

---

[1] Priv. Doc. 2 has been produced so is no longer in controversy.

(*See American Banker's Ins. Co. of Florida v. Colorado Flying Academy, Inc.*, 97 F.R.D. 515, 516 n.1 (D. Colo. 1983)(Rule 26(b)(3) codifies the work product doctrine recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947)).  See also *McCall v. Skyland Grain, LLC*, 08-cv-01128-PAB-BNB, 2009 WL 1203304, at *6-8 (D. Colo., April 29, 2009).  Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules.  *Frontier Refining Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).

In *Martin v. Monfort, Inc*., 150 F.R.D. 172 (D. Colo. 1993), when describing the process to be employed in deciding a claim of work product privilege, the court observed

> Rule 26(b)(3) . . . contemplates a sequential step approach to resolving work product issues.  First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged.  Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent.  Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like.  If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means.  Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Id*. at 172-173.

Of particular importance to this case, Rule 26(b)(3) does not protect from discovery materials prepared in the ordinary course of business.  *Weitzman v. Blazing Pedals, Inc*., 151

F.R.D. 125, 126 (D. Colo. 1993). Thus, to sustain a claim of work product immunity, the party

resisting discovery "must demonstrate that the documents at issue were prepared in anticipation

of litigation by or for [the party] or by or for [the party's] representative." *Wikel v. Wal-Mart*

*Stores, Inc*., 197 F.R.D. 493, 495 (N. D. Okla. 2000); *accord Pepsico, Inc. v. Baird, Kurtz &*

*Dobson LLP*, 305 F.3d 813, 817 (8th Cir.2002)("[i]n order to protect work product, the party

seeking protection must show the materials were prepared in anticipation of litigation, i.e.,

because of the prospect of litigation"). As the court in *Wikel* noted

> [M]embers of society tend to document transactions and occurrences to avoid the
> foibles of memory and to perpetuate evidence for the resolution of future disputes.
> And because litigation is an ever-present possibility in American life, it is more
> often the case than not that events are documented with the general possibility of
> litigation in mind. Yet, the mere fact that litigation does eventually ensue does
> not, by itself, cloak materials with work product immunity.

*Id.* at 495 (internal quotations omitted).

The multiple car/truck accident precipitating this litigation undisputedly originated when

Defendant's truck struck another vehicle in snowy, low-visibility weather. The driver of

Defendant's truck was killed in the accident. Certainly with respect to such an accident, there

will be claims by third parties that they were damaged and claims that the person at fault be held

responsible. Marten, therefore, was obligated to investigate the accident in order to determine

whether it would admit or deny fault and/or liability. The need for an investigation and the

knowledge that third parties may look to Marten for damages reimbursement, however, does not

instantly transform an investigative material into material created in anticipation of litigation

protected by the work product doctrine. It simply does not follow that there will be a need for

actual litigation of any one or more potential claims.  Often cases such as this are simply

resolved by negotiation over a payment to be made to innocent third parties involved in the

accident.  In fact this is the bread-and-butter work of insurance companies.[2]

At the time of the Nebraska accident Marten was acting as a self-insurer, having

eschewed insurance coverage for the first one million dollars of loss.  Marten thereby undertook

on the role of the insurance investigator/adjustor from the beginning.  It is beyond cavil that such

an accident would have to be investigated to answer the why, how, who, what, when and where

questions concerning the origination of the accident before a self-insured company could

evaluate liability and pay claims if appropriate.  When a company is self-insured and it alone is

evaluating the accident in the beginning, the company is simply acting as any insurance

company would and is not "anticipating litigation" any more than anyone involved in any

transaction or event with other persons may "anticipate litigation."

As noted by the *Wikel* court,

> [i]f the investigation of the accident would normally be undertaken, an
> investigative report developed in the ordinary course of business will not be
> protected as work product . . . .  Determining whether anticipated litigation is the

---

[2] A substantial part of an insurance company's business is to investigate claims made by
third parties against its insured. Therefore, courts uniformly hold that investigations usually are
part of the normal business activity of the insurance company, and the reports resulting from
those investigations normally are ordinary business records of the insurance company. *See
Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367, 373-74 (N.D. Ill. 1972).

> driving force behind the preparation of each requested document is the central
> inquiry in resolving work product questions."

*Id.* at 495-96.

The question of the applicability of work product protection, however, is cloaked with a

secondary shroud of investigation and evaluation in this case.  Outside of the investigation

largely conducted by Marten through Ryan McGee, its full time risk/claims investigator and

adjustor, the company also hired Stephen Gealy, an independent attorney in Lincoln, Nebraska,

and Jeffrey S. White of J.S. White & Associates to investigate the accident.  Mr. White was

originally hired by Marten directly and told by Marten to report his observations and findings

directly to Mr. Gealy.[3]  (Priv. Doc. 1 at 1.)  At the onset of Mr. White's employment by Marten,

he was not told that his investigation of the accident was related to any lawsuit, and indeed a

lawsuit was not filed in Nebraska until November 10, 2009.  *Id*.  Further Mr. White clarified with

Mr. Gealy, "At the time [Marten hired him] I was simply advised that a full investigation of the

accident was needed in this particular matter and that your client [Marten] is a self-insured

entity."  *Id*.

The attorney-client privilege protects from discovery communications made in

confidence between a client and an attorney.  *EEOC v. Outback Steakhouse of Fla.*, 251 F.R.D.

603, 610 (D. Colo. 2008).  "The lawyer-client privilege rests on the need for the advocate and

counselor to know all that relates to the client's reasons for seeking representation if the

---

[3] Marten originally directed Mr. White that all "reports and information would be forwarded to (sic) directly to the Baylor Law Firm to [Stephen Gealy's] attention."  (Priv. Doc. 1 at 1.)

professional mission is to be carried out." *Horton v. United States*, 204 F.R.D. 670, 672 (D.

Colo. 2002) (quoting *In re Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994).  In order to be

covered by the attorney-client privilege, a communication between a lawyer and client must

relate to legal advice or strategy sought by the client.  *United States v. Johnston*, 146 F.3d 785,

794 (10th Cir. 1998); *In the Matter of Grand Jury Subpoena*, 697 F.2d 277, 278 (10th Cir. 1983).

The purpose of the attorney-client privilege "is to encourage full and frank communication

between attorneys and their clients and thereby promote broader public interests in the

observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383,

389 (1981).  The attorney-client privilege facilitates the client's need for advice and the

attorney's need for complete information in rendering that advice.  *In re Qwest Communications

Int'l, Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006).  The party seeking to invoke the attorney-client

privilege bears the burden of establishing its applicability and the lack of waiver of any

privilege.  *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).  *See also United States v. Phelan*,

3 Fed. App'x 716, 718 (10th Cir. 2001).

Priv. Doc. 1 is undisputedly relevant as the term is defined in Fed. R. Civ. P. 26(b).  The

document is a synopsis of the investigation performed to date by Marten and the other public

investigators such as the Nebraska State Patrol and was drafted by Mr. White approximately ten

days after the accident.

I find that at the time Mr. White drafted his the original report of investigation contained

in Priv. Doc. 1 on February 22, 2007, Mr. White had been retained as part of the regular and

customary business of Marten as a self-insured trucking company to fully investigate a multi-car

accident involving one of the defendant's trucks and drivers.  Marten thereafter directed its hired

outside investigator to send his initial report to an attorney.  This does not in and of itself create

an attorney-client privilege as to this document.  Further, the document was not prepared in

anticipation of litigation, as noted in Mr. White's own words.  Therefore, I find that Priv. Doc. 1

does not benefit from the protection of the attorney-client privilege nor is it covered by the work

product privilege.  Therefore, Marten is directed to produce Priv. Doc. 1 (tracking numbers

1715-1729), together with all attachments referenced within the document, to the plaintiffs.

Priv. Doc. 8 is a letter from Jeffrey White to Ryan McGee dated June 6, 2007 concerning

the investigation of the accident and in particular the possibility of an interview with a potential

witness.  The letter examines the extent of a particular witness's knowledge and his value as a

witness in the case.  It does not contain any information concerning the valuation of the case, any

pending lawsuit or any particular plaintiff.  It appears to simply be a communication between the

two investigators on whether someone should be further interviewed.  Although it appears Mr.

Gealy was copied on the letter, the letter does not seek or even mention legal advice, litigation or

any aspect of valuation of claims as to any claimant.  I find Priv. Doc. 8 is covered by neither the

attorney-client nor the work product protections.  Therefore, Marten is directed to produce Priv.

Doc. 8 (tracking numbers 2244-2245), together with all attachments referenced within the

document, to the plaintiffs.

Priv. Docs. 3, 5, 6, and 7 are not directly attributable to any particular individual.  Priv.

Doc. 3 contains direct mention of certain claims being pursued against Marten by individuals

involved in the accident and therefore must have been created after a claim for damages was

made.  After *in camera* review of Priv. Doc. 3, I conclude that the document is covered by the work product privilege as it was obviously prepared in anticipation of litigation and contains references to an attorney's thought processes and case evaluation.  Priv. Docs. 5, 6 and 7 contain similar notes and other information and are likewise covered by the work product privilege for the same reasons.  I further find as to all this category of documents, the plaintiffs have not shown a substantial need for the materials in the preparation of their case and I can ascertain no such need on the basis of my independent review.  Therefore, Priv. Doc. 3 (tracking numbers 1188-1193), Priv. Doc. 5 (tracking number 1457), Priv. Doc. 6 (tracking numbers 1458-1459) and Priv. Doc. 7 (tracking numbers 1460-1461) are properly withheld from discovery on the basis of their privileged character.

Priv. Doc. 4 contains communications between Ryan McGee, an employee of Marten directly involved in the adjusting of claims and Stephen Gealy, outside Nebraska counsel retained by Marten on the day of the accident.  After independent review, I find that Priv. Doc. 4 is a communication between a lawyer and his client which relates to legal advice and strategy sought by the client .  Priv. Doc. 4 is protected by the attorney-client privilege and is therefore properly withheld from discovery in this case.

Wherefore, it is **ORDERED**

Plaintiffs' Motion to Compel Insurance Claim Investigation Materials  [Doc. No. 24] is **GRANTED in part** and **DENIED in part** as follows:

1.      The Motion is Granted to the extent that Defendant shall produce to the plaintiffs the documents previously listed on its privilege log [Doc. No. 24-2] as Priv. Doc. 1 and Priv.

Doc. 8 within forty-eight hours of this ORDER.

       2.      The Motion is Denied as to Priv. Docs. 3, 4, 5, 6 and 7.

Dated this 17th day of December, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge